1  PETER RUKIN (SBN 178336)
*prukin@rhdtlaw.com*
2  JESSICA RIGGIN (SBN 281712)
*jriggin@rhdtlaw.com*
3  REBECCA STEPHENS (SBN 299234)
*rstephens@rhdtlaw.com*
4  RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
5  San Francisco, CA 94111
Telephone: (415) 421-1800
6  Facsimile:  (415) 421-1700

7  DAVID R. MARKHAM (SBN 071814)
*dmarkham@markham-law.com*
8  PEGGY REALI (SBN 153102)
*preali@markham-law.com*
9  MAGGIE REALIN (SBN 263639)
*mrealin@markham-law.com*
10  THE MARKHAM LAW FIRM
750 B Street, Suite 1920
11  San Diego, CA 92101
Telephone: (619) 399-3995
12  Facsimile: (619) 615-2067

13
Attorneys for Plaintiffs
14

15               UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

| | |
|---|---|
| 18 MERCEDES ALVAREZ, MATT OHLSON, CEDRIC MARTIN, ALFONZO EDWARDS, 19 BRANDI LOPEZ, BRIAN LEIGH, JEFFREY HOLLOWAY, KRYSTA RAMOS, and TODD 20 GONSALVES, on behalf of themselves and all others similarly situated, 21           Plaintiffs, 22     v. 23 FARMERS INSURANCE EXCHANGE, 24           Defendant. 25 | Case No. 3:14-cv-00574-WHO **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** Date:  September 14, 2016 Time:  2:00 PM Place:  Courtroom 2, 17th Floor Judge:  Hon. William H. Orrick |

26

27

28

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 14, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable William H. Orrick, in Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will and hereby do make this unopposed motion for an order from this Court granting preliminary approval of the proposed class and collective action settlement in the above-entitled litigation. Through this motion, Plaintiffs seek an order from the Court: (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying for settlement purposes the proposed Settlement Class; (3) approving the form, content, and method of distribution of the Notice and notice plan; (4) appointing Dahl Administration as the Settlement Claims Administrator pursuant to the Settlement Agreement; (5) appointing Rukin Hyland Doria & Tindall LLP and the Markham Law Firm as Settlement Class Counsel; (6) appointing Mercedes Alvarez, Alfonzo Edwards, Todd Gonsalves, Jeffrey Holloway, Brian Leigh, Brandi Lopez, Cedric Martin, Matt Ohlson, and Krysta Ramos as settlement class representatives; and (8) scheduling a hearing regarding final approval of the proposed Settlement, Plaintiff's Counsel's request for attorney's fees and costs and service awards to Plaintiffs, and approval of the terms of the FLSA release.

Preliminary approval of the proposed settlement should be granted because it is fair, adequate, and reasonable. The proposed Notice should be approved because it provides a plain and clear description of the proposed settlement and Class Members' rights to be excluded from and/or object to the settlement, as well as their rights upon participating in the settlement. The method of distribution of the Notice by first-class mail should be approved because it is the best notice practicable under the circumstances and affords Class Members a full and fair opportunity to consider and respond to the settlement. Rukin Hyland Doria & Tindall LLP and The Markham Law Firm should be appointed as Settlement Class Counsel because they are experienced, well-qualified counsel that fairly and adequately represent the class. A final approval hearing should be scheduled to permit the Court to finally review the settlement and

1    class counsel's request for an award of attorney's fees and costs, consider any timely

2    objections, and to permit entry of final judgment.

3         This motion is based on this Notice of Motion and Motion, the Declaration of Peter

4    Rukin and its attached exhibits, the Declaration of David R. Markham and its attached exhibit,

5    all other pleadings and papers on file in this action, and such argument as the Court may hear.

6

7    Dated:  September 2, 2016                    Respectfully submitted,

8

9                                                RUKIN HYLAND DORIA & TINDALL LLP

10

11                                               By: /s/ Peter Rukin

12

13                                               Peter S. Rukin
                                                 Jessica Riggin

14                                               Counsel for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

## I.      INTRODUCTION

Plaintiffs seek preliminary approval of a class and collective action settlement on behalf of themselves and a proposed class of certain non-exempt Personal Lines Claims Adjusters (PLCAs) to resolve California wage and hour claims against Defendant Farmers Insurance Exchange ("Farmers"), as well as to resolve the federal Fair Labor Standards Act claims of the conditionally certified collective action members who have already filed timely consents to join this action.

The claims subject to resolution were heavily litigated by the parties. After the exchange of documents and data, dozens of depositions, discovery motion practice, and expert discovery and analysis, Plaintiffs sought certification of their claims for unpaid overtime and missed meal and rest breaks, unfair competition under the UCL, and statutory and civil penalties based on their belief that Farmers has class wide policies and practices that led to off-the-clock work and missed breaks. Farmers opposed certification and has denied any wrongdoing.  The class certification motion was fully briefed and after oral argument, the Court took the motion under submission.

While a decision on Plaintiffs' class certification motion was pending, the Parties entered into a Class Settlement Agreement ("Settlement" or "Settlement Agreement"). The Settlement provides for a maximum payment of $4,900,000.00 in return for a release and dismissal with prejudice of the claims alleged against Farmers, that were or could have been brought based on the facts, or claims alleged in any version of the complaints filed in this matter. The Net Settlement Amount will be distributed to the approximately 2,114 Settlement Class Members, based on the number of applicable workweeks, the position in which the Settlement Class Member worked, and whether the Settlement Class Member opted into the litigation as a FLSA Collective Action Member. The Settlement is a "non-claims made" settlement that does not require the submission of a claims form by Settlement Class Members.  Shares of the Net Settlement Amount attributable to individuals who opt out of the Settlement Class (or who rescind their FLSA consent to join form) are retained by Farmers as these individuals are not

1    releasing their claims against Farmers.

2           Plaintiffs submit that the proposed Settlement is fair and reasonable in light of the risks

3    Plaintiffs and Settlement Class Members face in connection with the class certification and

4    liability phases of this case. Plaintiffs' counsel believe that the Settlement—negotiated at arm's

5    length and with the assistance of an experienced, independent mediator—is a fair and reasonable

6    resolution of the alleged claims, particularly in light of the risk that Plaintiffs' pending class

7    certification motion could be denied. Accordingly, Plaintiffs respectfully request that the Court

8    (1) grant preliminary approval of the proposed Settlement; (2) preliminarily certify for settlement

9    purposes only the Settlement Class; (3) find the FLSA settlement and release fair and reasonable

10   (4) approve the form, content, and method of distribution of the Notice Packet; (5) appoint Dahl

11   Administration ("Dahl") as the Settlement Claims Administrator subject to the completion and

12   execution of an agreement between the Parties and Dahl; (6) appoint Rukin Hyland Doria &

13   Tindall LLP and The Markham Law Firm, P.C. as settlement Class Counsel; (7) appoint

14   Mercedes Alvarez, Alfonzo Edwards, Todd Gonsalves, Jeffrey Holloway, Brian Leigh, Brandi

15   Lopez, Cedric Martin, Matt Ohlson, and Krysta Ramos as settlement class representatives; and

16   (8) schedule a hearing regarding final approval of the proposed Settlement and Class Counsel's

17   request for attorneys' fees, costs, and service award payments, and approval of the terms of the

18   FLSA release.

19   **II.     FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS**

20          Plaintiffs assert that Farmers' purported policies and practices —including work volume

21   demands, time limits, competitive rankings, and "Behaviors" requirements—led PLCAs to work

22   overtime and through their breaks.  Plaintiffs also contend that, prior to 2015, Farmers lacked

23   any meal or rest break policy that described Farmers' legal obligation to relieve PLCAs of their

24   work obligations during a meal period or instructed PLCAs how to report a missed meal or rest

25   break. Farmers maintains that Plaintiffs' claims are without merit, that Farmers' policies,

26

27

28
                                                     2

1    practices, and procedures fully comply with the requirements of federal and state law, and that

2    Plaintiffs' claims are inappropriate for class or collective action treatment.[1]

3    **III.    PROCEDURAL BACKGROUND**

4        Plaintiffs filed this case against Farmers on behalf of themselves and the putative class of

5    California PLCAs on February 6, 2014. (Dkt. 1). The now-operative Third Amended Complaint

6    asserts claims for (1) unpaid overtime wages in violation of the Fair Labor Standards Act

7    (FLSA); (2) unpaid minimum and overtime wages in violation of California law; (3) failure to

8    provide meal periods; (4) failure to authorize and permit rest breaks; (5) waiting time penalties;

9    (6) unfair competition pursuant to the Business and Professions Code Section 17200; (7) wage

10   statement violations; and (8) PAGA claims for the Labor Code violations described above.[2]

11   (Dkt. 90).

12       The parties have engaged in substantial discovery to date. Farmers has presented 11

13   witnesses on 30(b)(6) topics, and Plaintiffs have taken the additional depositions of a Farmers

14   manager, a Farmers supervisor, a Farmers HR representative, and a Farmers IT employee, as

15   well as the deposition on written questions of Farmers highest-level HR executive. (Declaration

16   of Peter Rukin in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective

17   Action Settlement ("Rukin Decl."), ¶ 18). Farmers has deposed all of the nine Named Plaintiffs,

18   17 of the 19 Opt-in Plaintiffs and class members who submitted declarations in support of

19   Plaintiffs' motion for class certification, and two additional Opt-in Plaintiffs. (*Id*.). Plaintiffs also

20   have responded to discovery requests on behalf of 40 Named and Opt-in Plaintiffs, and Farmers

21   has produced over 39,000 pages of documents.  (*Id*.).

22

23   [1] A more detailed explanation of the Parties' respective positions regarding class certification is
24   set forth in Plaintiffs' motion for class certification, Farmers' opposition brief, and Plaintiffs'
     reply in support of Plaintiffs' motion for class certification. (Dkts. 106, 136, 143).

25   [2] Concurrent with the filing of this motion, the Parties have filed a stipulation and proposed order
     requesting permission for Plaintiffs to file a Fourth Amended Complaint which dismisses the
26   class allegations as to Residential Property Claims Representatives as their state law claims are
     encompassed by the *Dix v. Farmers' Insurance Exchange* matter currently pending in Riverside
27   Superior Court (Case No. INC 1204739).

28

                                                3

On September 19, 2014, this Court granted Plaintiffs' motion for conditional certification of Plaintiffs' FLSA overtime claims, and 311 PLCAs have since joined the case as Opt-in Plaintiffs. (Dkt. 55). Plaintiffs filed their motion for class certification in July 2015. (Dkt. 106). Farmers filed its opposition brief in October 2015, and Plaintiffs filed their reply in November 2015. (Dkts. 136, 143). The hearing on Plaintiffs' motion was initially scheduled for December 2015, but was postponed to allow the Parties to attend a mediation session on March 4, 2016 with experienced employment law mediator Michael Dickstein. (Rukin Decl., ¶ 10). Although the Parties did not reach a settlement that day, informal negotiations continued while the litigation proceeded. (*Id.*).

The Parties argued Plaintiffs' class certification motion on May 18, 2016, but prior to the Court issuing a decision, the Parties reached a settlement in principle, subject to completing a comprehensive written settlement agreement. (Rukin Decl., ¶ 11). Since then, the Parties have worked to resolve the remaining issues and executed a final written settlement agreement. (*Id.*).

## IV. TERMS OF THE PROPOSED SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement signed by the Parties and attached as Exhibit 1 to the Declaration of Peter Rukin. The following summarizes the Settlement Agreement's key terms.

A. The Settlement Class

The Settlement Class is composed of the following fund allocation groups:

(1) *FLSA Settlement Subclass.* All current and former Liability Claims Representatives, Auto Physical Damage Claims Representatives, and Residential Property Claims Representatives who performed work in California at any time from September 19, 2011, through August 30, 2016, who timely consented to join the conditionally certified collective action, and who have not withdrawn their consent to join the conditionally certified collective action or had their consent struck by the Court.

(2) *Liability Claims Representative Settlement Subclass.* All current and former Liability Claims Representatives who performed work in California at any time from February 6,

1    2010 through August 30, 2016.

2         (3) *Auto Physical Damage Claims Representative Hired On or Before October 15, 2014*

3    *Settlement Subclass.*  All current and former Auto Physical Damage Claims

4    Representatives who were hired on or before October 15, 2014, and who performed work

5    in California at any time from February 6, 2010 through August 30, 2016.

6         (4) *Auto Physical Damage Claims Representative Hired After October 15, 2014*

7    *Settlement Subclass.*  All current and former Auto Physical Damage Claims

8    Representatives who were hired after October 15, 2014, and who performed work in

9    California at any time from October 16, 2014 through August 30, 2016.[3]

10   (Rukin Decl., Exh. 1, ¶ 1.2). No Settlement Class Member shall be required to submit a claim

11   form to receive a settlement payment.  (Rukin Decl., Exh. 1, ¶ 5).

12        B.  Relief to the Settlement Class

13        The Settlement provides that Farmers will pay up to a maximum of $4,900,000 (the

14   "Gross Settlement Amount") in full settlement of the alleged class and collective action claims.

15   (Rukin Decl., Exh. 1, ¶ 1.14). Payment for Court-approved attorneys' fees and costs; Court-

16   approved service awards to the Named Plaintiffs; employer's share of payroll taxes;

17   administration costs; and to the State of California Labor and Workforce Development Agency

18   ("LWDA") will be deducted from the Settlement Amount. (Rukin Decl., Exh. 1, ¶¶ 6, 7, 8, 9,

19   11). The resulting "Net Settlement Amount" will be distributed to Settlement Class Members.

20   (Rukin Decl., Exh. 1, ¶¶ 5-10).

21        The Settlement shall be made on a non-claims-made basis and will be non-reversionary,

22   except that Farmers shall retain any Class Member's share of the Net Settlement Amount who

23   timely and validly submits a Request for Exclusion, or withdraws his/her consent to join form.

24   (Rukin Decl., Exh. 1, ¶¶ 4.1, 5.1, 10.1, 10.3). Additionally, if the Court does not approve the

25

26   [3] This settlement subclass also includes individuals who have opted out of the certified class in
     the *Jones v. Farmers Insurance Exchange* matter pending in Los Angeles Superior Court on
27   behalf of Auto Physical Damage Claims Representatives.

28

terms of the release for the FLSA Settlement Subclass, individuals' shares of the NSA attributable to the FLSA Settlement Subclass will be retained by Farmers.  (Rukin Decl., Exh. 1, ¶ 4.1).

Individual Settlement Payments shall consist of a pro rata share of the Settlement Amount that shall be calculated based on the following formula:

(1)    All members of the Liability Claims Representative Settlement Subclass shall be entitled to a Base Amount (equal to a value of "1") multiplied by the total number of weeks worked in that Settlement Subclass.

(2)    All members of the Auto Physical Damage Claims Representative Hired After October 15, 2014 Settlement Subclass also shall be entitled to a Base Amount multiplied by the total number of weeks worked in that Settlement Subclass.

(3)    All members of the Auto Physical Damage Claims Representative Hired On or Before October 15, 2014 Settlement Subclass shall be entitled to a Reduced Base Amount (equal to a value of ".5") multiplied by the total number of weeks worked in that Settlement Subclass.

(4)    All members of the FLSA Settlement Subclass shall be entitled to an Additional Amount (equal to a value of ".35") multiplied by the total number of weeks worked in that Settlement Subclass.

(5)    The Settlement Amount for each member of the Settlement Class shall be determined by multiplying the total of adjusted workweeks for that individual by the Net Settlement Amount divided by the total number of adjusted workweeks for the Settlement Class.

(Rukin Decl., Exh. 1, ¶¶ 5.1.1.1-5.1.1.5).

The Settlement Subclasses are afforded different valuations. Workweeks worked by members of the Liability Claims Representative Settlement Subclass and the Auto Physical Damage Claims Representative Hired After October 15, 2014 Settlement Subclass have been assigned a baseline value of 1.0 because Settlement Class Members in those Settlement

6

1   Subclasses are releasing the full spectrum of class claims asserted in Plaintiffs' motion for class

2   certification. (Rukin Decl., ¶ 12). In contrast, workweeks worked by members of the Auto

3   Physical Damage Claims Representative Hired On or Before October 15, 2014 Settlement

4   Subclass are allocated a value of .5 because their off-the-clock and penalty claims are already

5   certified in the context of the *Jones v. Farmers Insurance Exchange* matter pending in Los

6   Angeles Superior Court, Case No. BC412413, and accordingly are subject to the terms of the

7   proposed class settlement agreement in that case.[4]  (*Id.*)  Members of the FLSA Settlement

8   Subclass are entitled to an additional amount given the availability of liquidated damages under

9   the FLSA. (*Id.*)

10         C.   Settlement Notice and Exclusion Procedures

11         The Parties have agreed, subject to Court approval, to a notice plan that will provide

12   Class Members with sufficient information to make an informed decision about how and whether

13   to participate in the proposed Settlement, object to the proposed Settlement, or to exclude

14   themselves from the Settlement Class. Within fifteen calendar days after preliminary approval of

15   the Settlement, Farmers' counsel shall transmit to the Settlement Claims Administrator each

16   Class Member's name, employee identification number, last known address, dates of active

17   employment during the Settlement Class in covered positions, and social security number.

18   (Rukin Decl., Exh. 1, ¶ 14.2). Upon its receipt of the list of names and last known addresses of

19   each Class Member, the Settlement Claims Administrator shall access the National Change of

20   Address ("NCOA") Database, and update the addresses maintained by Farmers. (Rukin Decl.,

21   Exh. 1, ¶ 14.2.2). The Settlement Claims Administrator shall provide the Notice Packet by first

22   class mail, forwarding requested, to the Class Members at the addresses identified through the

23   process described above. (Rukin Decl., Exh. 1, ¶ 14.2.3). This mailing shall occur no later than

24   thirty calendar days after the entry of the Preliminary Approval Order. (*Id*.) If any Notice Packets

25

26   _____

27   [4] Although the motion for preliminary approval in the *Jones* matter was filed in July 2016, the
     court continued the hearing on the motion until October 19, 2016. (Rukin Decl., ¶ 13).

28

1   are returned as undeliverable within twenty calendar days after the date of the initial mailing or

2   where the NCOA Database indicates that the last known address of any Class Member is invalid

3   or otherwise undeliverable, the Settlement Claims Administrator shall perform one skip-trace

4   procedure within two business days of the date on which the Settlement Claims Administrator is

5   informed that a Notice Packet is undeliverable.  (Rukin Decl., Exh. 1, ¶ 14.2.4). If this procedure

6   reveals a new address, the Settlement Claims Administrator shall, within five business days

7   thereafter, re-mail the Notice Packet to the new address. (*Id.*)

8          Class Members will have 30 days from the mailing of the Notice to submit a request for

9   exclusion or any objection as to the Rule 23 Settlement Subclasses.  (Rukin Decl., Exh. 1, ¶

10  16.1). Members of the FLSA Settlement Subclass will have 30 days from the mailing of the

11  Notice to withdraw their consent to join form; if they do not timely submit a request to withdraw

12  their consent to join form, they will be bound by the terms of the FLSA Settlement Subclass

13  release. (Rukin Decl., Exh. 1, ¶ 14.3.1.2).

14         D.   Release of Claims

15         Class Members who are members of the FLSA Settlement Subclass and who do not

16  withdraw their opt-in form will release any and all claims arising under the FLSA from

17  September 19, 2011 through August 30, 2016.  (Rukin Decl., Exh. 1, ¶ 13.3.1.1). PLCAs who are

18  only members of the FLSA Settlement Subclass and no other Settlement Subclass will not

19  release any state law claims.  Class Members who are members of the Liability Claims

20  Representative Settlement Subclass, and/or Auto Physical Damage Claims Representative Hired

21  After October 15, 2014 Settlement Subclass—and who do not submit a valid request for

22  exclusion—will release any and all claims that were or could have been brought based on the

23  facts or claims alleged in any version of the complaints filed in this matter arising during the

24  period from February 6, 2010 through August 30, 2016, with the exception of alleged violations

25  of the Fair Labor Standards Act, unless the Settlement Class Member also is a member of the

26  FLSA Settlement Subclass. (Rukin Decl., Exh. 1, ¶¶ 13.3.1.2, 13.3.1.4). Class Members who are

27  members of the Auto Physical Damage Claims Representative Hired On or Before October 15,

28

Plaintiffs' Notice of Motion and Motion for Preliminary                    Case No. 3:14-CV-00574-WHO
Approval of Settlement

1  2014 Settlement Subclass, will release their meal/rest break claims as well as the ancillary

2  alleged penalty claims, but are not releasing claims for unpaid overtime as those claims are

3  encompassed by the *Jones* litigation and proposed settlement. (Rukin Decl., Exh. 1, ¶ 13.3.1.3).

4      E.  <u>Overlapping Lawsuits</u>

5      There are other pending class action lawsuits that allege claims that may overlap with

6  Released Claims in this Settlement Agreement.

7        •  *Kwesi Jones v. Farmers Insurance Exchange*, Los Angeles Superior Court

8  case no. BC412413, on behalf of California Auto Physical Damage Claims

9  Representatives employed in California from May 5, 2008 through October 15, 2014 for

10  unpaid minimum wage and overtime, improper pay stubs, waiting time penalties, and

11  Private Attorney General Act penalties.  There has been a class settlement reached in the

12  *Jones* case, and it is set for a hearing on preliminary approval on October 19, 2016.

13  (Rukin Decl., ¶ 13).

14        •  *Jennifer Araiza v. Farmers Insurance Exchange*, Riverside Superior Court

15  case no. RIC 1305688, on behalf of Liability and Auto Physical Damage Claims

16  Representatives employed in California from May 10, 2009 through March 1, 2016, who

17  were assigned a company vehicle, for unpaid business expense reimbursement, unpaid

18  wages, improper pay stubs, waiting time penalties and Private Attorney General Act

19  penalties.  Preliminary approval of a class settlement was granted on August 25, 2016.

20  (Rukin Decl., ¶ 14).

21        •  *Kevin Presser v. Farmers Insurance Exchange*, Los Angeles Superior

22  Court case no. BC592799, on behalf of Liability, Property, and Auto Physical Damage

23  Claims Representatives employed in California from September 1, 2014 for unpaid

24  minimum wages and overtime, meal and rest periods, unpaid business expense

25  reimbursement, improper pay stubs, waiting time penalties and Private Attorney General

26  Act penalties.  The *Presser* case essentially has been stayed since its inception due to the

27  pendency of the overlapping actions. (Rukin Decl., ¶ 15).

28

1        Participation in this settlement will not preclude participation in the *Jones* or *Araiza*

2 settlements nor, as the settlements are currently drafted, would it result in a diminished

3 distribution to the class members in those cases—despite the fact that there are potentially

4 overlapping releases as to the Labor Code Section 203 and 226 claims. The Release in this case

5 will, however, prevent Settlement Class Members from pursuing overlapping claims in *Presser*.

6 (Rukin Decl., ¶ 16).

7       F.   Service Payments, Attorneys' Fees, and Claims Administration

8        The Settlement provides that the following sums will be deducted from the Gross

9 Settlement Amount:  (1) service payments to the Named Plaintiffs in amounts to be approved by

10 the Court up to $10,000 for each Named Plaintiff; (2) the fees of the Settlement Claims

11 Administrator, not to exceed $25,000; (3) Class Counsel's attorneys' fees not to exceed a total of

12 25% of the Settlement Amount ($1,225,000), and costs not to exceed $150,000; and (4) a

13 payment of $30,000 to the LWDA in connection with Plaintiffs' PAGA claim. (Rukin Decl.,

14 Exh. 1, ¶¶ 6, 7, 8, 9).

15       G.  Payment

16        The payments set forth in this Agreement, including all service payments or attorneys'

17 fees, will be mailed no later than 30 calendar days after the Final Effective Date, which shall be

18 the date upon which both of the following have occurred:  (i) final approval of the Settlement is

19 granted by the United States District Court, Northern District of California, or other Court

20 assuming jurisdiction of this matter, and (ii) the Court's Judgment approving the Settlement

21 becomes final. Settlement Class Members shall have one hundred eighty calendar days to cash

22 their checks. After the expiration of the 180-day period, any uncashed checks shall be voided by

23 the Settlement Administrator, and the value of uncashed checks shall be paid to the State of

24 California Unclaimed Wages Fund. (Rukin Decl., Exh. 1, ¶ 10).

25 **V.    ARGUMENT**

26    **A.  Preliminary Approval of the Rule 23 Settlement is Appropriate**

27       In class action litigation, a court must approve the dismissal or compromise of the action.

28

1   Fed. R. Civ. P. 23(e).  This approval involves a two-step process in which the Court first

2   determines whether a proposed class action settlement warrants preliminary approval and,

3   second, after notice is sent to proposed Class Members, whether the settlement merits final

4   approval. *See State of California v. eBay, Inc.,* No. 5:12-CV-05874-EJD, 2014 WL 4273888, at

5   *5 (N.D. Cal. Aug. 29, 2014). Approval of a class action settlement rests in the sound discretion

6   of the Court, which should ultimately determine whether the settlement is fundamentally fair,

7   adequate, and reasonable to the Class. *See La Parne v. Monex Deposit Co.,* SACV 08-0302

8   DOC, 2010 WL 4916606, at *1 (C.D. Cal. Nov. 29, 2010).

9            Courts should grant preliminary approval of a settlement if "the proposed settlement

10  appears to be the product of serious, informed, non-collusive negotiations, has no obvious

11  deficiencies, does not improperly grant preferential treatment to class representatives or

12  segments of the class, and falls within the range of possible approval." *eBay, Inc.,* 2014 WL

13  4273888, at *5 (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal.

14  2007)). Courts should also apply their discretion in light of the judicial policy favoring

15  settlement of complex class action litigation. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*

16  *of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be

17  overlooked that voluntary conciliation and settlement are the preferred means of dispute

18  resolution. This is especially true in complex class action litigation . . . ."). The standard for

19  certification of a settlement class is different than the standard applied for certification of a

20  litigation class, insofar as there are no manageability concerns. *Amchem Products, Inc. v.*

21  *Windsor*, 521 U.S. 591, 620 (1997). *See also Carnegie v. Household International, Inc*., 376 F.3d

22  656 (7th Cir. 2004) ("The defendants are correct, however, that a class might be suitable for

23  settlement but not for litigation. The class might be unmanageable if the case were actually tried

24  yet manageable as a settlement class because the settlement might eliminate all the thorny issues

25  that the court would have to resolve if the parties fought out the case."); Newberg On Class

26  Actions § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement classes is generally routine

27  and courts are fairly forgiving of problems that might hinder class certification were the case not

28

11

1    to be settled." (collecting cases)). As discussed below, application of the relevant factors

2    supports preliminary approval of the proposed Settlement Class.

3                    1.        The Settlement is the Product of Informed, Non-Collusive Negotiation

4            As settlement inherently involves a potentially hard-fought compromise, "where a class

5    settlement has been reached after meaningful discovery, after arm's length negotiation,

6    conducted by capable counsel, it is presumptively fair." *Cicero v. DirecTV, Inc.*, EDCV 07-

7    1182, 2010 WL 2991486, at *3 (C.D. Cal. July 27, 2010) (internal citations and quotations

8    omitted). The use of an experienced private mediator also "tends to support the conclusion that

9    the settlement process was not collusive." *See Villegas v. J.P. Morgan Chase & Co.*, CV 09-

10   00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

11           In this case, the Settlement Agreement is the result of intensive, arm's-length negotiations

12   involving experienced employment counsel who are well-versed in the applicable substantive

13   law, class action litigation procedures, and the legal and factual issues of this particular case. The

14   Parties attended a full day of mediation and conducted additional negotiations over the course of

15   several months with the involvement of a well-regarded private mediator, all of which followed

16   extensive document production, dozens of depositions of both Class Members and Farmers'

17   representatives, and data analysis from a retained expert. *See* Section III, *supra.* "[S]uch

18   negotiations are highly indicative of [the] fairness" of the proposed Settlement. *See In re*

19   *Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (where

20   settlement reached in arm's length negotiations after relevant discovery had taken place and after

21   mediation session with experienced mediator).

22                   2.        The Settlement Falls Within the Range of Possible Approval

23           In deciding whether the proposed settlement is adequate and falls within the range of

24   possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the

25   value of the settlement offer," taking into account the risks of continuing litigation. *See Vasquez*

26   *v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.2009) (internal quotations

27   and citations omitted).  Courts should recognize that "the agreement reached normally embodies

28

                                                          12

1   a compromise; in exchange for the saving of cost and elimination of risk, the parties each gave

2   up something they might have won had they proceeded with litigation." *Officers for Justice*, 688

3   F.2d at 624 (internal quotations and citation omitted).  Here, the proposed Settlement is fair,

4   adequate and well within the range of possible approval.

5                      a. The Strength of Plaintiffs' Case and the Risk of Further Litigation
                          Support Preliminary Approval

6           As described in more detail in Plaintiffs' motion for class certification, Plaintiffs' primary

7   contention is that Farmers' alleged class wide policies and procedures led to off the clock work,

8   missed meal and rest breaks, and unfair business practices.  *See* Section II, *supra*. Although

9   Plaintiffs believe that the data and documents produced in discovery, information revealed

10  during the Class Member and Farmers' representative depositions, and their expert's analysis all

11  support their allegations that Farmers is liable for wage-and-hour violations, a finder of fact

12  could reach a different conclusion. A trier of fact might, for example, determine that Farmers'

13  policies and practices were lawful and, taken together, did not lead to off-the-clock work, or that

14  Farmers did not know or had no reason to know that Class Members failed to take meal or rest

15  breaks. Without conceding that any adverse conclusions would be correct or appropriate,

16  Plaintiffs recognize the risk of possible negative outcomes. Also, while Plaintiffs vigorously

17  contend that the claims in this case are appropriate for class certification, it is possible that

18  Plaintiffs would not prevail in their pending class certification motion. The Court may find, for

19  example, that there is no common question amenable to certification, or that issues common to

20  the Class are overwhelmed by issues that relate to each individual Class Member's particular

21  circumstances. This Settlement avoids that substantial uncertainty, while ensuring that Class

22  Members receive substantial consideration now for a release of their claims.

23                          b. The Settlement Consideration and Allocation Are Fair

24          "[I]t is well-settled law that a cash settlement amounting to only a fraction of the

25  potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness

26  and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation

27  to judgment."  *Villegas,* 2012 WL 5878390, at *6 (internal quotations and citations omitted).

28

                                                    13

1    Here, the Settlement involves the payment of a fair and reasonable sum, particularly in light of

2    the risks of further litigation. Based on Plaintiffs' counsel's valuation, the maximum potential

3    recovery for the overtime and meal and rest break claims in this case could reasonably range

4    from approximately $22 million (assuming one missed meal break a week; one missed rest break

5    a week; and one hour of off-the-clock work a week, every week on average) to approximately

6    $66 million (assuming three missed meal breaks a week; three missed rest breaks a week; and

7    three hours of off-the-clock work a week, every week on average), such that the Net Settlement

8    Amount could reasonably constitute anywhere between 22% and 7.4% percent of the maximum

9    damages potentially recoverable by the Class—a significant recovery in light of the risks of

10   litigation. (Rukin Decl., ¶¶ 20, 21). It is possible, however, that even if a jury found liability in a

11   phase one trial, that the damages awarded could be substantially less than the maximum damages

12   estimated above—as Farmers has contended throughout the litigation. The Settlement also

13   affords relief to Class Members who likely would never have filed individual claims for unpaid

14   overtime wages.  Under the circumstances of the case, the amount of the Settlement is fair,

15   adequate and reasonable.  *See also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.

16   2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the

17   plaintiff's risks); *Villegas,* 2012 WL 5878390, at *6 (preliminarily approving a settlement

18   representing 15% of the potential recovery).

19          The plan of allocation of the Settlement to Class Members is also fair and reasonable.

20   The Settlement provides that the settlement fund shall be allocated based on workweeks worked

21   by Class Members, a standard allocation methodology in wage-and-hour cases.  *See, e.g., Cicero*,

22   2010 WL 2991486, at *5 ("the fund will be distributed based on the number of weeks worked by

23   each class member, which appears to be a fair method of distributing the fund").

24          The Settlement also recognizes differences in the categories of claims asserted by class

25   members. For example, the overtime claims for members of the Auto Physical Damage Claims

26   Representative Hired On or Before October 15, 2014 Settlement Subclass were certified in the

27   *Jones* litigation and are subject to the terms of the proposed settlement agreement in that case,

28

Plaintiffs' Notice of Motion and Motion for Preliminary          Case No. 3:14-CV-00574-WHO
Approval of Settlement

and, accordingly, they have fewer claims to release in this case. (Rukin Decl., ¶ 12). Similarly, those individuals who filed consent to join forms in this case and accordingly are members of the FLSA Settlement Subclass are entitled to an additional payment to compensate them for the FLSA liquidated (i.e., double) damages claims they are releasing. (*Id.*) It is fair to all Class Members to award Individual Settlement Payments based on appropriately weighted workweeks that account for the differences in the strength of Class Members' claims. *See, e.g., Pierce v. Rosetta Stone, Ltd.*, C 11-01283 SBA, 2013 WL 1878918, at *6-7 (N.D. Cal. May 3, 2013).

c.   The Attorneys' Fees and Costs that Plaintiffs Will Request Are Reasonable

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees in an amount not to exceed $1,225,000 (25% of the Settlement Amount) and an award of costs in an amount not to exceed $150,000. Plaintiffs submit that this provision is fair and reasonable, given the significant time and expense that Class Counsel have devoted to this case over the last two and a half years and the result that they have achieved for the Class. (Rukin Decl., ¶ 23). Class Counsel's fees will be tied directly to the amount that is actually paid out to the Settlement Class, and the request is within the range of reasonableness under Ninth Circuit authority. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) ("the Ninth Circuit has consistently approved a 'benchmark' award of 25 percent of the common fund"). Class Counsel shall file their application for fees and costs no later than twenty calendar days after Notice is mailed, and Settlement Class Members may object no later than thirty calendar days after Notice is mailed.

d.   The Proposed Service Awards Are Reasonable

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  In evaluating incentive awards, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Smith v. CRST Van*

1  *Expedited, Inc.*, 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) (quoting

2  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D.Cal.1995)).

3      Here, Plaintiffs' counsel assert that awarding service payments to the Plaintiffs is

4  consistent with a fair, just and adequate settlement. As explained earlier, *see* Section IV, *supra,*

5  the Settlement Agreement provides that Farmers will not oppose service awards in certain

6  amounts to the Plaintiffs, and in the motion for final approval Plaintiffs will approval of service

7  payments in the amount of $10,000 per Named Plaintiff for the service each Plaintiff provided to

8  the Class.

9             e.    The Court Should Appoint Dahl Administration as Claims Administrator

10      To ensure the fair and efficient administration of the Settlement, the Court should appoint

11  Dahl Administration ("Dahl"), an experienced claims administrator, to distribute the Notice and

12  administer claims under the Settlement Agreement. Plaintiffs anticipate that Dahl will be paid no

13  more than $20,000.00 to perform all of the functions of the Claims Administrator under the

14  terms of the Settlement Agreement, including, without limitation, the following tasks: verifying

15  Class Members' mailing addresses; mailing Notice to the approximately 2,114 Class Members

16  and potentially re-mailing returned notices; compiling and calculating Class Members'

17  settlement payments; addressing any Class Members' objections to workweek information;

18  communicating with the Parties' counsel; distributing settlement checks to Class Members;

19  establishing and administering a Qualified Settlement Fund; and tax remittances and reporting.[5]

20  (Rukin Decl., ¶ 22).

21      **B.**    **The FLSA Settlement and Release Is Fair and Reasonable**

22      The test for approval of a settlement and release of FLSA claims mirrors the Rule 23

23  standard. A district court presented with a proposed settlement of FLSA claims "must determine

24

25  [5] Although the Parties anticipate that the administration costs will not exceed $20,000, the

26  Parties' request that the Court approve administration costs up to $25,000 is to ensure that there is an adequate cushion without the need to seek an additional Court order in the event of

27  unanticipated administration expenses.

28

Plaintiffs' Notice of Motion and Motion for Preliminary                 Case No. 3:14-CV-00574-WHO
Approval of Settlement

1   whether the settlement is a fair and reasonable resolution of a bona fide dispute.... 'If a settlement

2   in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA

3   coverage or computation of back wages, that are actually in dispute[,] ... the district court [may]

4   approve the settlement in order to promote the policy of encouraging settlement of litigation."

5   *Yue Zhou v. Wang's Restaurant*, No. 05–cv–0279 PVT, 2007 WL 2298046, *1 (N.D. Cal. Aug.

6   8, 2007) (quoting *Lynn's Food Stores*, 679 F.2d at 1355)); *see also McKeen–Chaplin v. Franklin*

7   *Am. Mortg. Co*., No. 1–cv–5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

8        As discussed above, *see* Section II, *supra,* the parties have a bona fide dispute regarding

9   overtime wages, and the settlement represents a reasonable compromise of those claims.  Each

10   Opt-in Plaintiff who does not withdraw his or her consent to join the FLSA Settlement Subclass

11   will receive an additional payment attributable to his or her membership in the FLSA Settlement

12   Subclass, and the release of claims by FLSA Settlement Subclass members is narrowly tailored

13   to include only FLSA claims. (Rukin Decl., Exh. 1, ¶ 13.3.1.1).

14        **C.**    **Certification of a Settlement Class Is Proper**

15        Plaintiffs respectfully request that the Court provisionally certify the proposed Settlement

16   Class for settlement purposes only.  *See Cicero*, 2010 WL 2991486, at *3 ("A class may be

17   certified for the purposes of settlement where a settlement is reached before a litigated

18   determination of class certification.") (internal citation omitted).  The purpose of provisional

19   class certification is to facilitate distribution, to all proposed Settlement Class Members, of

20   notice of the terms of a proposed settlement and the date and time of the final approval hearing.

21   *See Manual for Complex Litigation, Fourth* §§ 21.632-33.

22        Here, the parties seek to settle California class claims pursuant to Federal Rule of Civil

23   Procedure 23, as well as FLSA collective action claims pursuant to 29 U.S.C. §216(b).  In

24   connection with final approval of the Settlement, the Parties will seek approval of the terms of

25   the FLSA release as to the Settlement Class Members who have filed consent to join forms in

26

27

28

1    this case.[6]

2        1.      Standards Governing Approval of Settlement Classes

3            In the context of granting preliminary approval of the Settlement, the Court must make a

4    threshold determination as to whether the proposed Settlement Class meets Rule 23

5    requirements.  *See Ching*, 2013 WL 6200190, at *3.  Namely, the Court must determine whether

6    the proposed Settlement Class satisfies the requirements of: (1) numerosity; (2) commonality; (3)

7    typicality; and (4) adequacy. *Hanlon v. Chrysler Corp.*, 150 F.3d 1019-20 (9th Cir. 1998).

8    Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3).  *Id.* at

9    1022. As discussed above, the standard for certification of a settlement class is more lenient than

10   the standard for certification of a class for the purposes of litigation.

11           Based on the applicable standards, as further discussed below, the Court should certify

12   the proposed Settlement Class for settlement purposes only:  Liability Claims Representatives

13   who performed work for Farmers Insurance Exchange in California at any time from February 6,

14   2010 through August 30, 2016; Auto Physical Damage Claims Representatives who performed

15   work for Farmers Insurance Exchange in California at any time from February 6, 2010 through

16   August 30, 2016 and who were hired on or before October 15, 2014; Auto Physical Damage

17   Claims Representatives who performed work for Farmers Insurance Exchange in California at

18   any time from February 6, 2010 through August 30, 2016 and who were hired after October 15,

19   2014 (except with respect to unpaid wages and overtime claims);and all current and former

20   Liability Claims Representatives, Auto Physical Damage Claims Representatives, and

21   Residential Property Claims Representatives  who performed work in California at any time

22   from September 19, 2011, through August 30, 2016, who timely consented to join the

23   conditionally certified collective action, and who have not withdrawn their consent to join the

24

25   [6] The Parties recognize that the settlement of FLSA claims is not subject to approval under Rule
     23.  However, because the proposed distribution formula contemplates that Settlement Class
26   Members who have filed consent to join forms will receive additional shares of the Net
     Settlement Amount in exchange for the release of their FLSA claims, the Parties seek approval
27   of the terms of the FLSA release in connection with this motion.

28

1   conditionally certified collective action or had their consent struck by the Court.

2   Farmers does not oppose this request and has agreed to certification for settlement purposes

3   only.[7]

4               2.      The Settlement Class Satisfies the Requirements of Rule 23(a)

5           The proposed Settlement Class satisfies the more lenient requirements for certifying a

6   settlement class under Rule 23(a). First, this Settlement Class is sufficiently numerous to satisfy

7   the requirements of Rule 23(a)(1), as courts have generally found the numerosity requirement

8   satisfied when a class includes at least 40 members. *See, e.g., EEOC v. Kovacevich "5" Farms*,

9   No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007).  Here, the

10  proposed Settlement Class totals approximately 2,114 Class Members.

11          Second, Rule 23(a)(2) is satisfied in the context of a proposed class settlement because

12  Plaintiffs assert that there are questions of law or fact common to the Settlement Class.  *See*

13  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) ("Commonality only

14  requires a single significant question of law or fact."). Here, Plaintiffs assert that common

15  questions include whether:

16          • PLCAs worked off the clock;

17          • Farmers' uniform methods of performance evaluation pressured PLCAs to

18             work beyond their scheduled shifts;

19          • Farmers has a common and widespread practice of not following its

20             written policies regarding overtime;

21          • Farmers knew or should have known that PLCAs were working off the

22             clock;

23          • Farmers maintained a policy of failing to provide meal periods to PLCAs;

24

25  ───────────────

[7] If preliminary or final approval of the Settlement is not granted, the Parties revert to their
26  respective positions prior to the filing of this motion and Farmers reserves all rights and
     arguments as to whether the claims in this case are appropriate for class certification or second
27  stage collective action certification.

28
                                          19

- Farmers knew or should have known PLCAs were not provided with meal periods

- Farmers maintained a policy of failing to make premium payments to PLCAs for missed or late meal periods that it did not provide;

- Farmers lacked a mechanism for paying meal period premium wages; and

- Farmers failed to authorize and permit rest breaks.

Third, Plaintiffs assert that the typicality requirement of Rule 23(a)(3) is satisfied in the context of a settlement class because the claims raised by Plaintiffs are typical of the claims asserted on behalf of the Class.  Typicality is established if representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Plaintiffs allege that the claims of the Plaintiffs in this case arise out of the same factual and legal circumstances as the claims of other Class Members. The Plaintiffs allege that they worked overtime hours off the clock, were not provided with meal and rest breaks, did not receive premium payments when they missed such breaks, and did not receive lawful wage statements. *See, e.g.*, Dkts. 42, 90, 106. Thus, the Plaintiffs are members of, and allege the same injuries as, the settlement classes they seek to represent, and their claims are reasonably co-extensive with those of the proposed Settlement Class.

Fourth, the Plaintiffs and Class Counsel contend that they will adequately represent the Settlement Class Members. Rule 23(a)(4) requires that the parties fairly and adequately protect the interests of the class. The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class.  *Hanlon*, 150 F.3d at 1020. Rule 23(g)(1) requires courts, when appointing class counsel, to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its representation.

1   Here, Plaintiffs assert that the interests of the Plaintiffs and absent Class Members are not

2   antagonistic. The Plaintiffs have the same claims to unpaid overtime and related penalties as do

3   other Settlement Class Members; they have suffered the same alleged injury and are entitled to

4   the same remedy. Plaintiffs' counsel are aware of no conflicts between the Plaintiffs and other

5   Class Members that would render them inadequate class representatives.

6   Additionally, Plaintiffs' counsel, Rukin Hyland Doria & Tindall LLP and The Markham

7   Law Firm, P.C. have actively identified, investigated, and prosecuted the claims that are the

8   subject of this Settlement; have extensive experience in class action litigation, including wage-

9   and-hour claims of the type asserted here; have been appointed Class Counsel in other cases on

10   numerous occasions; and have demonstrated that they have the ability and resources to

11   vigorously pursue the claims asserted in this litigation.  (Rukin Decl., ¶¶ 4-7, Declaration of

12   David R. Markham in Support of Plaintiffs' Motion for Preliminary Approval of Class and

13   Collective Action Settlement, ¶¶ 3, 4). Additionally, Plaintiffs' counsel have actively litigated

14   Plaintiffs' claims for over two and a half years and was successful in obtaining conditional

15   certification of the FLSA claims. For these reasons, Plaintiffs contend that Plaintiffs' counsel and

16   the Plaintiffs meet the adequacy requirement of Rule 23(a)(4) in the context of certifying a class

17   settlement, and Plaintiffs' counsel should be appointed as Class Counsel for the proposed

18   Settlement Class pursuant to Rule 23(g).

19   3.   The Settlement Class Meets the Requirements of Rule 23(b)(3)

20   Plaintiffs assert that the Settlement Class meets the requirements of Rule 23(b)(3) in the

21   context of certifying a settlement class, because common questions "predominate over any

22   questions affecting only individual members," and class resolution "is superior to other available

23   methods for the fair and efficient adjudication of the controversy."

24   First, Plaintiffs contend that the Settlement Class satisfies the predominance requirement,

25   which examines whether the proposed classes are "sufficiently cohesive to warrant adjudication

26   by representation." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant

27   aspect of the case and they can be resolved for all members of the class in a single adjudication,

28

1   there is clear justification for handling the dispute on a representative rather than on an

2   individual basis." *Id.*  Here, Plaintiffs assert there is sufficient cohesion to warrant class

3   adjudication for settlement purposes because Plaintiffs believe that Farmers' purported

4   performance metrics, Behaviors, and ranking system are uniform across the Class. *See* Section II,

5   *supra*; Dkt. 106. Plaintiffs also assert that common documentary and testimonial evidence could

6   be used to establish that Farmers knew about PLCAs' off-the-clock work. *Id.* Additionally,

7   Plaintiffs assert that prior to 2015, Farmers did not have a mechanism for paying meal period

8   premium wages, or a pay code for missed meal and rest breaks, or a method to record the reasons

9   why a break was missed, short, or late. *Id.* Plaintiffs assert that these common factors

10  predominate over any individualized issues in this case.

11      **D.      The Proposed Notice is Adequate**

12      Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class

13  members who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e)(1).  The notice

14  provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable

15  under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory "if it generally

16  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

17  investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566,

18  575 (9th Cir. 2004) (internal citations omitted).

19      The proposed Notice and notice plan satisfy the requirements of Rule 23(e) and due

20  process.  The proposed Notice, submitted as Exhibit 2 to the Declaration of Peter Rukin, explains

21  the nature of the action and the terms of the Settlement (including the Settlement Amount,

22  individual Class Members' estimated minimum recovery, the attorneys' fees to be paid, how

23  settlement payments will be calculated, and the claims that will be released); how the Class

24  Member may exclude oneself from the Settlement or object to the Settlement and the deadlines

25  for doing so; and that those who do not opt out will be bound to the settlement.  *See* Rukin Decl.,

26  Exh. 2. This information is more than sufficient to satisfy Rule 23(e).  *See, e.g., Villegas,* 2012

27  WL 5878390, at *8 (approving a notice containing the same categories of information).

28

Additionally, the proposed Notice informs the Class Members of the existence of the *Jones*, *Araiza* and *Presser* cases and provides them with the contact information for the plaintiffs' attorneys in those cases.[8]  *See* Rukin Decl., Exh. 2.

As described above in Section IV(C), the proposed Notice plan also ensures that Class Members receive the best notice possible.  The Claims Administrator will run a skip trace search upon receiving the Class List from Farmers and the Notice will contain contact information for Plaintiffs' counsel and the Claims Administrator to answer questions, as well as a website that will contain all relevant information regarding the settlement. This is the best notice practicable. *See Misra v. Decision One Mortgage Company*, No. SA CV 07-0994, 2009 WL 4581276, at *9 (C.D. Cal. April 13, 2009) (use of NCOA database and appropriate skip tracing followed by mailed notice is the "best notice that is practicable under the circumstances").

### E.   Plaintiffs Request That the Court Set a Final Approval Hearing

Finally, the Court should set a hearing for final approval of the Settlement on a date appropriately scheduled to follow the date by which Class Members must file objections to the Settlement and Plaintiffs' counsel's motion for attorneys' fees and costs.  The Parties propose that Plaintiffs' counsel's motion for attorneys' fees and costs and service awards for the Plaintiffs be filed and served no later than 50 days after the Court grants preliminary approval; that Plaintiffs' motion for final approval of the settlement be filed and served at least 30 calendar days before the final approval hearing; and that the hearing on final approval of the Settlement be set for the soonest available date that is more than 95 calendar days after the Court grants preliminary approval.

### VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant

---

[8] Because the Fourth Amended Complaint dismisses the class allegations as to the Residential Property Claims Representatives and the Settlement in this case does not release the state law claims for those individuals, the Parties do not believe that reference in the Notice to the *Dix* litigation is necessary.

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Settlement

Case No. 3:14-CV-00574-WHO

1   preliminary approval of the proposed Settlement; (2) preliminarily certify for settlement

2   purposes the proposed Settlement Class  (3) approve the form, content and method of

3   distribution of the Notice and notice plan; (4) appoint Dahl as the Settlement Claims

4   Administrator pursuant to the Settlement Agreement; (5) appoint Rukin Hyland Doria & Tindall

5   LLP and the Markham Law Firm as Settlement Class Counsel; (6) appoint Mercedes Alvarez,

6   Alfonzo Edwards, Todd Gonsalves, Jeffrey Holloway, Brian Leigh, Brandi Lopez, Cedric

7   Martin, Matt Ohlson, and Krysta Ramos as settlement class representatives and (8) schedule a

8   hearing regarding final approval of the proposed Settlement, Plaintiffs' Counsel's request for

9   attorney's fees and costs and awards of service awards to the Plaintiffs, and approval of the terms

10   of the FLSA release.

11

12   DATED: September 2, 2016                    RUKIN HYLAND DORIA & TINDALL LLP

13

14                                              By:  */s/ Peter Rukin*
                                                       Peter Rukin
15
                                                     Counsel for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28